**In re SEASPIRE, INC., Debtor.**

**Bankruptcy No. 85–3120–BKT–11.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 5, 1988.

John Yanchunis, St. Petersburg, Fla., for debtor.

R.C. Fernon, Tampa, Fla., for movant.

## ORDER ON MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the immediate matter under consideration is a Motion for Payment of Administrative Expenses (sic) filed by Joseph Murrman, the claimant in the above Code 11 case. Seaspire, Inc. the Debtor in the above captioned case, filed its first Petition for Relief in this Court on April 29, 1985. In September, 1985, that case was dismissed by this Court. The present case which involves the Motion referred to above was filed on October 30, 1985, and even though the Plan of Reorganization has been confirmed, the case is still open.

The procedural background of the matter in controversy is somewhat confusing but to put this matter in a proper focus, a brief recitation of the facts relating to this subject would be helpful.

On March 17, 1986, Joseph Murrman filed a proof of claim in the present case in the total amount of $12,000.00. The claim on its face fails to indicate whether or not it is claimed to be a general unsecured claim or whether it should be treated as an administrative claim based on

§ 503 of the Bankruptcy Code. In due course the Debtor objected to the claim which objection was considered and on December 22, 1986, this Court entered an Order sustaining the objection and disallowing the claim of Murrman with leave granted to file another claim within 30 days of the entry of the order. Rather than file a new proof of claim counsel for Murrman filed the Motion for Allowance of Administrative Expense. In the body of the motion, counsel for Murrman recited that Murrman's claim is based on an oral contract between Murrman and the Debtor for services allegedly rendered by Mr. Murrman and that Murrman's claim should be entitled to first priority pursuant to § 507(a)(1) of the Bankruptcy Code because it qualifies as a cost of administration pursuant to § 503 of the Bankruptcy Code. The body of the motion also recites that the total claim filed in the amount of $10,384.80 was a combination of services performed prior to the commencement of the case and that only $2,931.23 is claimed to be for services rendered post-petition. Notwithstanding the fact that in the prayer clause Murrman prays for the allowance of the $10,384.80 pre-petition claim as an administrative expense, this Court is satisfied that there is no question that, if at all, only $2,931.33 can be considered as an allowance as cost of administration because conceivably this represents the amount allegedly earned by Murrman after the commencement of the case.

The evidence presented at the final evidentiary hearing together with parts of several depositions of which this Court takes judicial notice reveal the following facts germane and relevant to the matter under consideration.

At the time the Debtor filed its original petition, the Debtor was the owner of a certain facility located in Clearwater, Florida, which at times was operated as a restaurant. Debtor, Seaspire, Inc., was formed in 1977 by Mr. Harris who was originally the sole stockholder and president of the Debtor corporation. The operation of the facility ceased sometime prior to 1985 and the property appeared to be abandoned. During the time relevant to the controversy, Mr. Harris spent the bulk of his time traveling in Europe, living in Israel and in Switzerland, and the affairs of the Debtor corporation were placed in the hands of a St. Petersburg attorney, Mr. Samuels, who represented the corporation.

It appears that Mr. Harris decided to sell the property which was the sole asset of the Debtor and engaged the services of a local broker who placed a sign on the property indicating that any inquiries concerning the acquisition of property should be directed to the broker named on the sign. It further appears that in late 1984 the City of Clearwater cited the Debtor for Building Code violations. Subsequent to that Mr. Murrman had written a letter to Mr. Samuels and outlined a proposal which indicated that he would repair, clean up and maintain the building so that it would meet the Code requirements. After this communication Mr. Samuels contacted Mr. Harris, the principal of the Debtor and sought his instructions concerning the proposal made by Mr. Murrman. In December, 1984, Mr. Samuels, in the company of Mr. Murrman attended a hearing at which time the City of Clearwater considered the alleged violations of the Code and having found violations fined the Debtor $200.00 per day but granted a moratorium under the condition that the Debtor would hire a caretaker who would make the necessary repairs and secure and clean up the premises and rehabilitate the facility to the extent that it would meet the requirements of the Building Code. At the conclusion of the hearing Mr. Samuels told Murrman to go ahead and secure the building and clean it up and told him that Mr. Harris will make the arrangements with Mr. Murrman.

Upon his return, Mr. Harris was presented with a letter written by Murrman to Samuels in which Murrman asked that if he is given space for living in the facility, that he in return would act as a live in caretaker. It was not until two months later that Mr. Murrman actually met Mr. Harris, at which time they discussed the arrangement. It appears that on January 25th Mr. Harris spoke to Mr. Murrman who restated his desire to enter

into the transaction. Harris responded to him that the idea appears to be interesting but informed him that he was no longer a stockholder in the Debtor corporation but agreed to meet him in person anyway. After having looked the place over, they agreed that Mr. Murrman would take up residency and be an on-site caretaker for the property and in return for his residency Murrman would clean up the inside of the building, trim the trees, and clean and maintain the outside of the building. At the end of the conversation it was agreed that since the property was listed for sale with a broker, Mr. Harris agreed that Mr. Murrman would be permitted to reside at the building for at least one year but in the event the property was sold earlier, he would receive compensation for his labor at a rate of $400.00 a month for every month which he was not able to reside at the property because of its sale. That appeared to be the total substance of an agreement. It is clear to this Court that at no time was any written contract entered into between Murrman and Mr. Harris the principal of the Debtor spelling out the details of a contract. Moreover there was no enforceable oral contract ever entered into between the Debtor and Murrman because there is no competent evidence in this record to establish any specific terms either as to the rate of compensation or as to the duration of Murrman's employment.

This leaves for consideration whether or not what allowance, if any, can be granted to Murrman on a quantum merit basis determining the value of the services rendered by him.

While there is evidence in this record presented by Murrman that the value of his services was $5.00 per hour, the actual number of hours actually worked post petition by Mr. Murrman is in great doubt. It is without dispute, for instance, that he was hospitalized for a while for some medical condition. There is also evidence in this record via testimony of the real estate broker that he visited the building several times and never saw Mr. Murrman on the premises. The number of hours which is claimed to have worked, which is 40 hours per week, is rejected. Moreover, it is without dispute that by April the premises were restored to an acceptable standard required by the Building Code. Thus, there is nothing in this record to show what additional actual work was required to maintain the property. Aught that it appears, Murrman's role thereafter was nothing more than the role of an onsight caretaker of a vacant building, who received free lodging in addition to some equipment which he was permitted to, and in fact did, sell. In absence of anything else, this Court is satisfied that the reasonable compensation would have been $400.00 per month for the month remaining on the unexpired one year lease. Although Murrman began negotiations with Samuels earlier and actually begun to work on the property in December, 1984, the evidence establishes that the alleged oral lease agreement was entered into in February, 1985, with the year commencing from that date. In light of this, this Court is satisfied that Murrman had one month remaining on the lease and he is entitled to $400.00 for the one month remaining on the unexpired lease. Further, this Court finds that Murrman is also entitled to $375.00 for expenses incurred in order to retain laborers to assist in the rehabilitation of the property.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Payment of Administrative Expenses filed by Joseph Murrman be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor be, and is hereby, ordered to pay within 30 days of the date of the entry of this Order the sum of $775.00 as full payment of Joseph Murrman's administrative claim charged against the estate in the above captioned Chapter 11 case.